IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DAVID L. McCARTY,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **Civil No. 09-715-GPM-CJP** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |

## REPORT and RECOMMENDATION

This Report and Recommendation is respectfully submitted to District Judge G. Patrick Murphy pursuant to **28 U.S.C. § 636(b)(1)(B)**.

In accordance with **42 U.S.C. § 405(g)**, plaintiff David L. McCarty seeks judicial review of the final agency decision finding that he is not disabled and denying him Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) pursuant to **42 U.S.C. § 423**.

## Procedural History

Plaintiff filed an application for DIB and SSI in December, 2006, alleging disability beginning on June 30, 2004.[1] The application was denied initially and on reconsideration. At plaintiff's request, a hearing was held before Administrative Law Judge (ALJ) Joseph W. Warzycki on September 9, 2008. ALJ Warzycki denied the application for benefits in a decision dated January 23, 2009. (Tr. 14-25). Plaintiff's request for review was denied by the Appeals

---

[1]The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 1382, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. For all intents and purposes relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925, detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Thus, plaintiff's DIB and SSI claims will be considered simultaneously, and most citations are to the DIB regulations out of convenience.

Council, and the January 23, 2009, decision became the final agency decision.  (Tr. 1-4).

Plaintiff has exhausted his administrative remedies and has filed a timely complaint in this court.

## Issues Raised by Plaintiff

Plaintiff filed a brief at **Doc. 25.**  He raises four issues:

(1)     Whether the ALJ's RFC Assessment that plaintiff could sit for 6 hours was supported by substantial evidence;

(2)     Whether the ALJ erred in assessing plaintiff's mental impairments;

(3)     Whether the ALJ erred in assessing plaintiff's credibility and in analyzing the effects of his obesity; and

(4)     Whether the ALJ erred in weighing the medical opinions and evidence, including evidence that plaintiff had headaches.

## The Evidentiary Record

This Court has reviewed and considered the entire record in formulating this Report and Recommendation.  The following is a summary of some of the pertinent portions of the written record.

**1.     Plaintiff's Testimony**

The evidentiary hearing took place on September 9, 2008.   Plaintiff was represented at the hearing by attorney David Camp.  (Tr. 28).

Plaintiff was about 5' 7" tall and weighed about 310  pounds.  He was single and had no children.  He lived with his parents.  (Tr. 31-32).  He graduated from high school, but was in special education classes most of the time.  (Tr. 33).  He has no special training.  He can read and write.  (Tr. 33-34).

He last worked in June of 2004 as a cook in a hospital coffee shop.  He had worked there

for a year. He left that job because he had hurt his ankle and standing was painful. He tried to find work after that, but was unable to find anything. (Tr. 34). He also has worked as a cook and maintenance man at Hardee's and as a stocker in a grocery store and in a toy store. (Tr. 36-38).

With regard to his daily activities, Mr. McCarty testified that he gets up around 11:00 or 12:00, and then really doesn't do much. His parents, who are in their seventies, wash the dishes, cook, and do the household chores. His mother does his laundry. He is able to grocery shop, but one of his parents goes with him. He is able to go to a drugstore or clothing store, but has trouble getting around. He rides a motorized cart in the store. (Tr. 39-40). He watches a lot of television and reads a little. (Tr. 41). He usually naps for an hour and a half in the afternoon. He does not go our very much. His girlfriend comes to visit. (Tr. 42).

His only medication was over-the-counter pain relievers. (Tr. 44).

Mr. McCarty testified that he has pain in his head, back, knee and foot. He gets headaches twice a day, and sometimes more often. He has had pain in his back since a bike fell on him when he was working at the toy store. He also said heavy lifting had hurt his back. Over-the-counter pain medication sometimes relieves his pain. His right knee has been painful since a car accident in February of 2007. His right foot has been painful since he stepped in a hole in 2002 or 2003. He worked after that injury, but it started to bother him again and he could not stand. (Tr. 45-47).

Plaintiff reinjured his ankle shortly before the hearing, and was using a cane. (Tr. 47-48).

Mr. McCarty testified that it is "kind of like depressing" because he has all these problems. He has not taken any medication for depression. He finds it hard to concentrate when his head hurts. (Tr. 49).

Plaintiff testified that he can sit for about half an hour. He can stand for 15 or 30

minutes, and can walk less than a mile.  He can lift 15 pounds.  He cannot kneel or get down on all fours.  He has to "scoot [his] butt down" to get down stairs, and has to hold the bannister to go up.  (Tr. 49-50).

**2.     Vocational Expert**

Jeffrey Magrowski, Ph.D. testified as a vocational expert.  Plaintiff had no objections to his qualifications.  (Tr. 55).

The VE testified that plaintiff's past work as a cook was generally medium, but his work at Hardee's was heavy since he did some stocking also.  His work stocking at a grocery store was heavy and semi-skilled, and his work at the toy store was very heavy and semi-skilled.  (Tr. 56-57).

Asked to assume a person who could do sedentary work, but with postural limitations and no exposure to ladders, ropes and scaffolds, the VE testified that plaintiff could not perform any of his past work.  However, there are other jobs which he could perform: surveillance system monitor (300 jobs in local economy), food and beverage order clerk (over 1,000 jobs), and packager (over 300 jobs).  (Tr. 57-58).

On cross-examination, the VE testified that, if he assumed the limitations in Dr. Spezia's report, there would be no jobs that he could perform.  If he assumed that plaintiff had to take more than 3 breaks a day, he could not perform any job.  Lastly, if he needed to take a nap or lie down during the work day, he could not work.  (Tr. 59-60).

**3.     Medical Records**

David McCarty was born on July 19, 1972, and was 36 years old when the ALJ issued his decision. (Tr. 128).  In his application, he alleges disability beginning on June 1, 2004.  (Tr. 128).

On September 12, 2002, plaintiff was seen by Dr. Michael Gainer for a sprained right ankle, which happened when he stepped into a hole. X-rays showed no fracture. (T r. 306). By October 10, 2002, the sprain was resolving. (Tr. 307).

In August of 2005, plaintiff presented to emergency room complaining of pain in his right elbow. (Tr. 330). An x-ray showed mild osteoarthrosis. (Tr. 300).

In February of 2007, plaintiff went to the emergency room after having been involved in a car accident. He had pain in his left hand and knee. (Tr. 312). An x-ray of the left knee on February 2, 2007, showed osteoarthritis but no fracture or dislocation. (Tr. 298). An x-ray of the left hand showed no fracture or dislocation. (Tr. 297).

Plaintiff was seen by Dr. James Needles for the February, 2007, accident. He complained of pain in his left shoulder and hand. (Tr. 295)

Dr. Deppe performed a consultative psychological evaluation of plaintiff in March, 2007. (Tr.263-65). Plaintiff's IQ score was 85, which is in the average range of intellectual functioning. Testing results indicated that he would be likely to have little difficulty performing mildly complicated job-related duties. (Tr. 264). He concluded that Mr. McCarty's ability to relate to fellow workers and supervisors was intact, as was his ability to understand and follow simple instructions. He had intact ability to maintain attention required to perform simple, repetitive tasks and to withstand the stress and pressures associated with day-to-day work activity. (Tr. 265).

Also in March, 2007, Dr. Chapa performed a consultative evaluation of plaintiff. His examination showed essentially normal results. Dr. Chapa noted that plaintiff had a full range of motion of the lumbosacral spine. There was no swelling of the right ankle. The right ankle was stable with a full range of motion. He had good hand grip on both sides and could perform gross

and fine manipulation with both hands.  Neurological examination was normal.  (Tr. 269-274).

The record was reviewed by a state agency physician, Dr. Patey, in March, 2007.  He determined that plaintiff's impairments were non-severe.  (Tr. 266-268).  A second state agency physician, Dr. B. Rock Oh, agreed with this assessment.  (Tr. 289-290).

A state agency psychologist, Dr. Appleton, performed a psychiatric review technique in late March, 2007, and concluded that plaintiff did not have a medically determinable mental impairment.  A second state agency psychologist concurred.  (Tr. 275-288, 289-290).

Dr. Needles saw plaintiff again on May 1, 2007.  The doctor noted that he was applying for disability, and that he had upper back and ankle pain and chronic headaches.  (Tr. 296).

An x-ray taken of the cervical spine on August 30, 2007, showed no fractures, but a slight reversal of the lordotic curve.  The history was motor vehicle accident in February, 2007, whiplash injury, neck pain and headaches.  (Tr. 367).

On June 10, 2008, Dr. Robert Ringhoffer saw plaintiff for a "lengthy exam and discussion."  This doctor had seen plaintiff in 1999, and had seen him after his car accident. Plaintiff's attorney had requested copies of the doctor's records in connection with his disability claim, and the doctor wanted to see Mr. McCarty as it had been over a year since he had last seen him.  (Tr. 352).  Plaintiff was 35 years old and "overweight at 333 pounds."  The doctor noted that Mr. McCarty claimed to have a learning disability but the doctor was "unclear" as to the nature.  He noted that plaintiff had been in a car accident the prior year, but did not think that he had any "serious sequallae" from that.  The doctor noted that he "has to lose weight."  He noted that plaintiff has had problems with his feet since birth, and that his feet turn inward and have very high arches.  Dr. Ringhoffer said that plaintiff needs to see a podiatrist and get special shoes and/or supports.  The doctor stated that he "truly believe[d]" that, with the right shoes, his foot pain would markedly improve.  (Tr. 352).

On June 23, 2008, plaintiff was examined by Michael J. Spezia, D.O. Dr. Spezia noted that plaintiff was 35 years old, 5'9" tall, and weighed 322 pounds. He gave a history of twisting his ankle due to falling in to a hole, and a history of pain in the low back and difficulty with mobility of the left arm and left knee secondary to trauma. On examination, he showed decreased mobility of the lumbar spine and pain and muscle spasm of the right ankle and leg. He was using a walker, and had limited motion of the right ankle. (Tr. 469-470). Dr. Spezia completed a medical source statement in which he indicated that plaintiff had very limited functioning in that he could sit for only 1 out of 8 hours, stand for only 30 minutes, frequently lift 5 pounds and occasionally lift 10 pounds. His main disabling conditions were said to be morbid obesity, residual effects of motor vehicle accident and right ankle sprain with limitation of motion and ankle tendinitis. (Tr. 469-473).

On June 26, 2008, Mr. McCarty went to the emergency room at St. Elizabeth's Hospital in Belleville, Illinois, for pain in his right foot. He gave a history of chronic foot pain for 4 years, and stated that he had tripped a few days earlier, which increased his pain greatly. On exam, his right foot and ankle were swollen and bruised. A walking boot was prescribed. (Tr. 376-377).

An x-ray of the right ankle on June 26, 2008, showed soft tissue swelling and "accessory ossicles versus unfused apophysis bilaterally although small avulsions cannot be excluded." (Tr. 360). An x-ray of the right foot showed osteoarthritis. (Tr. 361).

Dr. James Taylor, D.P.M., saw plaintiff for a sprained right ankle on June 30, 2008. Plaintiff told Dr. Taylor that he had suffered an inversion-type injury of his right ankle on June 20, 2008. Dr. Taylor noted that x-rays taken at the hospital had showed an avulsion chip fracture of the distal aspect of the right fibula. Examination showed tenderness to palpation around the distal right fibula. Range of motion was within normal limits, with tenderness on inversion of the ankle. The doctor recommended that he continue with the immobilization boot that had been

applied in the emergency room, and continue taking Ibuprofen. (Tr. 474-476). Plaintiff returned to Dr. Taylor on July 24, 2008. He had tenderness in the arch of the right foot. X-rays showed no fractures. The diagnosis was ankle sprain, and he was given Celebrex samples. (Tr. 473-474).

     A post-hearing evaluation was performed by Dr. Alan Morris on October 16, 2008. (Tr. 479). Dr. Morris reviewed some of plaintiff's medical records and examined him. Plaintiff complained of his right ankle, left shoulder and spine between the shoulder blades. He had no complaints of low back pain. Plaintiff told Dr. Morris that he had stopped working because he was unable to stand for long periods of time following a right ankle injury. He had reinjured the ankle when he tripped 3 or 4 months prior. He also stated that he had injured his left arm and shoulder when a bike fell on him at work years prior. He claimed to have daily pain in the left shoulder. He also claimed to have pain between his shoulder blades off and on. Plaintiff told Dr. Morris that he was able to do "all activities of daily living" and that he was not taking any medications. On exam, he had some swelling of the right ankle. Dr. Morris diagnosed right ankle sprain, thoracic sprain, and no pathology with regard to the left shoulder. He completed a statement of ability to do work-related activities. He opined that Mr. McCarty could frequently lift or carry up to 20 pounds, occasionally lift or carry 21 to 50 pounds, stand for 1 hour at a time and a total of 2 hours out of an 8 hour day, and walk for 1 out of 8 hours. His conclusions with regard to ability to sit were contradictory in that he indicated that plaintiff could sit for 8 hours at a time, but could only sit for 5 hours out of 8. There were no limitations with regard to the use of his hands. His postural activities (balance, stoop, etc.) were limited due to his weight. (Tr. 483-488).

### Applicable Standards

     To qualify for DIB or SSI, a claimant must be disabled within the meaning of the

applicable statutes.  For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).**  A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  **42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C).**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled.  In essence, it must be determined (1) whether the claimant is presently employed; (2) whether the claimant has an impairment or combination of impairments that is severe; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.  **See,** *Schroeter v. Sullivan*, **977 F.2d 391, 393 (7th Cir. 1992);** *Pope v. Shalala*, **998 F.2d 473, 477 (7th Cir. 1993); 20 C.F.R. § 404.1520(b-f).**

If the Commissioner finds that the claimant has an impairment which is severe and she is not capable of performing her past relevant work, the burden shifts to the Commissioner to show that there are a significant number of jobs in the economy that claimant is capable of performing.  **See,** *Bowen v. Yuckert*, **482 U.S. 137, 146, 107 S. Ct. 2287, 2294 (1987);** *Knight v. Chater*, **55 F.3d 309, 313 (7th Cir. 1995).**

It is important to keep in mind the proper standard of review for this Court. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g).**   Thus, the Court must determine not whether Mr. McCarty is, in fact, disabled, but whether ALJ Warzycki's findings were supported by substantial

evidence; and, of course, whether any errors of law were made.  **See, *Books v. Chater*, 91 F.3d 972, 977-978 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir.1995)).**

In reviewing for substantial evidence, this Court uses the Supreme Court's definition, that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  ***Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971).**  Further, the entire administrative record is taken into consideration, but this court *does not* reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.  ***Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997).**

## Analysis

Here, the ALJ properly followed the five step analysis.  He concluded that plaintiff does have severe impairments of obesity, right ankle pain and osteoarthritis of the right foot, and that these impairments do not meet or equal a listed impairment. (Tr. 16-17).  Mr. McCarty does not challenge the finding that his condition does not meet or equal a listed impairment.

Plaintiff's first point is that the ALJ's RFC Assessment that plaintiff could sit for 6 hours was not supported by substantial evidence.  Plaintiff argues that no doctor opined that he had such ability.  However, the determination of RFC is an issue which is reserved to the Commissioner.  20 C.F.R. 404.1527(e); SSR 96-5p, at *2.  Pursuant to Section 404.1527(e)(2), the Commissioner considers evidence from medical sources in determining RFC, but "the final responsibility for deciding these issues is reserved to the Commissioner."  Further, SSR96-8p instructs that the "RFC assessment must be based on *all* of the relevant evidence in the case record," including medical history, medical signs and laboratory findings, effects of treatment, reports of daily activities, lay evidence, medical source statements, etc. SSR96-8p, at *5 (emphasis in original).  Therefore, plaintiff's suggestion that the ALJ's determination of his RFC must accord with a doctor's assessment is incorrect.

The ALJ discussed the evidence with regard to plaintiff's ability to sit. He noted that, although plaintiff told Dr. Chapa on March 10, 2007, that he could not sit for very long due to back pain, Dr. Chapa's exam showed a full range of motion of the back with no muscle spasms. (Tr. 20). On October 16, 2008, plaintiff told Dr. Morris that he had intermittent pain between his shoulder blades, which caused him to limit heavy lifting; there was no mention of back pain interfering with his ability to sit. Further, plaintiff told Dr. Morris that he could do all activities of daily living. (Tr. 22). ALJ Warzycki also noted that plaintiff told Dr. Spezia that he had low back pain and Dr. Spezia reported limited range of motion of the lumbar spine. (Tr. 21). However, the ALJ gave little weight to Dr. Spezia's opinion because it was based on a false premise in that plaintiff neglected to tell Dr. Spezia that he had suffered an acute injury just 3 days before Dr. Spezia's exam. (Tr. 23).

In sum, based on the record as a whole, the ALJ reasonably concluded that plaintiff has no significant limitations resulting from back pain. He noted the lack of any positive x-ray findings with regard to his back, he discussed the conflicts in the medical evidence, and he considered the non-medical evidence with regard to plaintiff's ability to sit. The ALJ's findings as to plaintiff's RFC are supported by substantial evidence in the record. He put forth a sufficient analysis of the evidence and set out a logical explanation of his conclusions about how plaintiff's symptoms limit his ability to work. This is legally sufficient. **Kasarsky v. Barnhart, 335 F. 3d 539, 543 (7th Cir. 2003)**.

Mr. McCarty's second point can be quickly dispensed with. He argues that the ALJ should have found that he has some limitations arising from mental impairments. However, he points to nothing in the record to establish such limitations.

Plaintiff testified that he was in special education classes in school. However, IQ testing

done by Dr. Deppe showed that he had average intellectual functioning.  The ALJ also noted that Dr. Deppe assigned a GAF of 70, which indicates that the person is "generally functioning pretty well." (Tr. 20).  Plaintiff argues that Dr. Deppe and Dr. Appleton "implied" that he should be limited to simple instructions and simple, repetitive tasks, but neither doctor expressed any such limitation.  See, Tr. 265, 275.

Mr. McCarty also challenges the ALJ's finding that he was not entirely credible.

The credibility findings of the ALJ are to be accorded deference, particularly in view of the ALJ's opportunity to observe the witness.  ***Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).**  Social security regulations and Seventh Circuit cases "taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from 'merely ignoring' the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding." ***Schmidt v. Barnhart*, 395 F.3d 737, 746-747 (7th Cir. 2005), and cases cited therein**.

The ALJ found that plaintiff's claim of migraines occurring twice a day was not credible because he never sought treatment for migraine headaches.  See, Tr. 17.  Plaintiff counters that there are mentions of headaches in his medical records, which is true.  However, there was never a diagnosis of migraine headache, and no treatment was ever given for migraine headaches.

The ALJ also questioned plaintiff's credibility in that he failed to tell Dr. Spezia that he had suffered an acute injury to his right ankle and foot just 3 days prior to Dr. Spezia's examination.  See, Tr. 23.  The ALJ did make a mistake in that he thought that an immobilizer boot was prescribed before the visit to Dr. Spezia, but this mistake was minor.  The fact remains that plaintiff presented his ankle and foot symptoms as long-standing to Dr. Spezia when they had in fact been caused by a fall just 3 days prior.  Plaintiff has not demonstrated any error with

regard to the credibility findings. As the ALJ's credibility findings were not "patently wrong," they should not be overturned. ***Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).**

Plaintiff also argues that the ALJ failed to adequately consider limitations caused by his obesity. .

The ALJ accurately noted that obesity cannot be considered as a separate impairment, but the effects of obesity must be considered along with the plaintiff's other impairments. (Tr. 23). This is correct. See, SSR 00-3p (Titles II and XVI: Evaluation of Obesity). Here, the ALJ did in fact discuss the effects of his obesity and assigned significant limitations in postural activities as a result. See, Tr. 23. The hypothetical question that was posed to the VE at the hearing included these limitations.

Plaintiff suggests that the ALJ erred in not finding that he had non-exertional limitations resulting from obesity. He cites to SSR 02-1p, which says that a claimant with obesity "may" have certain problems. However, he points to no evidence in the record that his obesity causes him any limitations other than the limitations that were assigned by the ALJ.

Lastly, plaintiff also complains about the fact that the ALJ discounted the opinion of Dr. Spezia. Curiously, he cites to the "treating physician" rule, 20 C.F.R. §404.1527(d)(2), in this regard. However, Dr. Spezia did not treat Mr. McCarty. Rather, he examined plaintiff on the referral of plaintiff's counsel.

As was discussed above, the ALJ gave little weight to Dr. Spezia's report because Dr. Spezia was not informed that plaintiff had reinjured his ankle just 3 days prior to his examination. It was not unreasonable for the ALJ to conclude that the extreme limitations found by Dr. Spezia were attributable to the recent injury and that his opinion did not represent a credible evaluation of chronic limitations.

Plaintiff also complains that the ALJ did not properly assess the medical evidence with regard to his complaints of headaches. However, the ALJ accurately noted that the medical evidence did not contain any mention of migraine headaches. There were notations of headaches, but the evidence did not support a finding that plaintiff was disabled as a result.

### Recommendation

After careful consideration, this Court is convinced that the decision of the ALJ is supported by substantial evidence in the record as a whole, and that no errors of law were made. Therefore, this Court recommends that the final decision of the Commissioner of Social Security, finding that plaintiff David L. McCarty is not disabled, be **AFFIRMED.**

Objections to this Report and Recommendation must be filed on or before **February 22, 2011.**

**Submitted: February 2, 2011**

                                            s/ Clifford J. Proud
                                            **CLIFFORD J. PROUD**
                                            **UNITED STATES MAGISTRATE JUDGE**