**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| DAVID L. McCARTY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL NO. 09-715-GPM |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY | ) |
| MICHAEL J. ASTRUE, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

This matter is before the Court on a Report and Recommendation from United States Magistrate Judge Clifford J. Proud, submitted in accordance with 28 U.S.C. § 636(b)(1).

### BACKGROUND

Plaintiff filed this action on September 10, 2009, seeking review of a final decision by the Commissioner of Social Security to deny his application for disability insurance benefits and supplemental security income. The Commissioner denied his application after Administrative Law Judge (ALJ) Joseph W. Warzycki, employing the required five-step analysis of 20 C.F.R. § 404.1520, determined that Plaintiff did not have an impairment or combination of impairments that met the requirements of 20 CFR 404.1525, 404.1526, 416.925 and 416.926. ALJ Warzycki also found that significant numbers of jobs exist in the national economy that Plaintiff can perform. The hearing before ALJ Warzycki was held on September 9, 2008. Plaintiff attended that hearing in person, represented by counsel. ALJ Warzycki rendered his decision on January 23, 2009. The

administrative decision became final when the Appeals Council declined to review the ALJ's decision (Doc. 22-2). Magistrate Judge Proud recommends that the Commissioner's final decision be affirmed because it is supported by substantial evidence. Plaintiff objects to Judge Proud's Report and Recommendation, claiming that Judge Proud did not hold the ALJ to the proper legal standard regarding the determination of Plaintiff's sitting limitations, credibility, headache severity, non-exertional limitations due to obesity, and mental limitations. Plaintiff also objects that the ALJ did not give proper weight to the opinions of examining doctors Dr. Spezia and Dr. Ringhofer.

## DISCUSSION

Where timely objections to a Report and Recommendation are filed, this Court must undertake a *de novo* review. 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); Local Rule 73.1(b) of the United States District Court for the Southern District of Illinois; *Goffman v. Gross,* 59 F.3d 668, 671 (7th Cir. 1995). The Court "has discretion to accept, reject [or] modify" the magistrate judge's recommended decision. *Goffman,* 59 F.3d at 671. In making this determination, the Court must look to all of the evidence contained in the record and "give 'fresh consideration to those issues to which specific objections have been made'" *Rajaratnam v. Moyer,* 47 F.3d 922, 924 n.8 (7th Cir. 1995), *quoting* Charles Alan Wright et al., *Federal Practice and Procedure* § 3076.8 at p. 55 (1st ed. 1973) (Supp. 1994).

As an initial matter, the Court notes the standard under which it reviews the Commissioner's final decision. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Thus, judicial review is limited to whether the ALJ's findings were supported by substantial evidence and if any errors of law were made. *See Allord v. Astrue,* 631 F.3d 411, 415 (7th Cir. 2011). "Substantial evidence" is defined

as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007). "The ALJ is not required to address every piece of evidence or testimony presented, but must provide a 'logical bridge' between the evidence and the conclusions[.]" *Jones v. Astrue,* 623 F.3d 1155, 1160 (7th Cir. 2010). This Court may not reweigh evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Young v. Barnhart,* 362 F.3d 995, 1001 (7th Cir. 2004). The Court has reviewed the entire record of proceedings at the administrative level and the briefs filed by the parties in this action.

In the ALJ's residual functional capacity assessment, he found that Plaintiff has the capacity to sit six hours in an eight-hour day. Plaintiff now objects that the six-hour finding was unsupported by the record. At the September 9, 2008 hearing, ALJ Warzycki asked Plaintiff if he had "any problems sitting" (Doc. 22-2 at 50). Plaintiff answered: "Not really, but if I sit too long then I have to get up and, you know." Plaintiff was then questioned by his attorney about how long he can sit in a chair. "I'd say maybe about half an hour and then I would have to get up and stretch, because it depends on the chairs" (Doc. 22-2 at 52). Plaintiff stated that he naps every day, and that after an hour and a half of alternating between sitting and stretching, he would want to nap (*Id.*). At the hearing, Plaintiff rated his back pain at a '9' on a scale from 1 to 10, and he is "sometimes" able to relieve that pain with over-the-counter medication (Doc. 22-2 at 47). In his Decision, ALJ Warzycki noted that there was no radiological testing from any physician to support Plaintiff's claims of severe back pain. Plaintiff was seen by Dr. Vittal Chapa on March 10, 2007. Dr. Chappa indicated that Plaintiff told him that "if he sits for long periods of time, he has back pain" (Doc. 22-7 at 51). Dr. Chappa noted that Plaintiff "has full range of motion of the lumbosacral spine" (Doc. 22-7 at 54). At a June 23, 2008 evaluation with Dr. Michael Spezia, Plaintiff complained of pain and discomfort

in his lower back (Doc. 22-9 at 96). Dr. Spezia noted that Plaintiff is unable to "sit or walk for a period of time greater than 30 minutes," and Dr. Spezia indicated that in an eight-hour workday, Plaintiff could sit for one hour (Doc. 22-9 at 97, 98). On October 16, 2008, Plaintiff was examined by Dr. Alan Morris. Dr. Morris noted that he was in receipt of Dr. Spezia's disability evaluation (Doc. 22-9 at 106). Plaintiff did not complain of back pain to Dr. Morris. Dr. Morris conducted a spinal examination and noted no muscle spasm or tenderness in the thorocolumbar spine, but did note some strain in the thoracic region (Doc. 22-9 at 108, 109). On the "SITTING/STANDING/WALKING" evaluation, Dr. Morris marked that Plaintiff can sit for eight hours at one time without interruption, but also marked that Plaintiff could sit for five total hours in an eight-hour workday (Doc. 22-9 at 111).

ALJ Warzycki determined that Plaintiff does not have a sitting limitation which renders him "impaired" equal to one of the listed severe impairments in the CFR. The record provides substantial support for that position. The ALJ notes the Plaintiff's variable complaints of discomfort and his variable accounts of ability to sit for extended periods. The ALJ reasonably credits Dr. Morris's examination of the Plaintiff, which noted no spinal spasms or tenderness and included a determination that Plaintiff could sit for either eight hours or five hours. The residual functioning capacity in ALJ Warzycki's Decision does contemplate that Plaintiff will take two hours of breaks from sitting during an eight-hour day, and is consistent with Dr. Morris's report.

Plaintiff further objects to the ALJ's discussion of the Plaintiff's credibility. Plaintiff claims that "the ALJ relied on factual and/or logical errors concerning McCarty's headaches and ankle/foot symptoms" to make an unsupported determination about Plaintiff's credibility (Doc. 35). ALJ Warzycki pointed to "[t]he lack of any medical evidence to substantiate the claimaint's complaints

of back pain," as a factor that lowered the Plaintiff's credibility.  The ALJ further questioned the credibility of Plaintiff's complaints regarding the severity of his ambulation restrictions–when Plaintiff himself stated that he was able to engage in activities of daily living which require agility and mobility (Doc. 22-2 at 19).  Based on a general comparison of Plaintiff's medical records with Plaintiff's complaints, ALJ Warzycki found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" (Doc. 22-2 at 23, 24).  Therefore it is not the case, as Plaintiff suggests, that the ALJ's entire credibility determination was based on the ALJ's mistaken belief that an immobilizer boot had been prescribed prior to Plaintiff's visit with Dr. Spezia (to which Plaintiff did not wear an immobilizer boot).  This "misread[]" is an "outlier[] and do[es] not indicate that the ALJ's decision lacked an adequate factual basis.  *Berger v. Astrue,* 516 F.3d 539, 544 (7th Cir. 2008).  "The ALJ's credibility determinations are entitled to special deference because the ALJ has the opportunity to observe the claimant testifying.  Rather than nitpick the ALJ's opinion for inconsistencies or contradictions, [they are given] a commonsensical reading." *Jones v. Astrue,* 623 F.3d 1155, 1160 (7th Cir. 2010).  The ALJ's credibility determinations are reversed only if they are "patently wrong."  *Id.*  ALJ Warzycki's credibility determination is reasonable and will not be reversed here.

Plaintiff also objects to the ALJ's decision that his headaches were not a severe impairment, and claims that the ALJ made that decision on the mistaken finding that the Plaintiff never complained of severe headaches to any doctor.  What ALJ Warzycki did say was that the medical records reveal no complaints of "migraines," and, while he would be mistaken to find that Plaintiff made no complaints of headaches in the record, there is substantial support that Plaintiff's headaches

were not debilitating. The ALJ's report does acknowledge Plaintiff's complaint of daily headaches, for which Plaintiff related he semi-successfully controls with over-the-counter medication (Doc. 22-2 at 20, 46). Again, there is adequate evidence in the record to support a finding that Plaintiff's headaches are not a severe impairment, particularly considering Plaintiff's ability to participate in activities of daily living and the fact neither Plaintiff nor any medical professional identified Plaintiff's headaches as severely limiting.

Plaintiff also objects to a purported lack of consideration the ALJ gave to nonexertional limitations caused by Plaintiff's obesity. To the contrary, ALJ Warzycki did consider aggregate effects of Plaintiff's obesity, including resultant problems with "his balance, mobility, and ability to perform postural activities" (Doc. 22-2 at 24). The ALJ also heard Plaintiff's report of his desire to frequently nap. Plaintiff now objects that the ALJ disregarded limitations arising from his obesity such as sleep apnea and fatigue (Doc. 35). It is important to note that neither the medical records nor Plaintiff's own self-report detail such impairments. The ALJ considered Plaintiff's obesity and the effects of Plaintiff's obesity in his Decision and did not find a resultant severe impairment. The record supports this decision–there is no indication in the record that any occult nonexertional limitations would substantially reduce Plaintiff's ability to perform activities of daily life or work functions.

Plaintiff goes on to object to the weight ALJ Warzycki gave to the opinions of doctors Brad Ringhofer and Michael Spezia. Dr. Ringhofer examined Plaintiff on June 10, 2008. From Dr. Ringhofer's notes of that visit, it appears that Plaintiff had some previous treatment with Dr. Ringhofer, but Dr. Ringhofer insisted on another visit before the doctor faxed medical records for a disability hearing as he "didn't know why [Plaintiff] was applying for disability" (Doc. 22-8). Dr.

Spezia examined Plaintiff on June 23, 2008 upon referral from Plaintiff's counsel. In his objection to the Report and Recommendation, Plaintiff cites the ALJ's failure to give sufficient weight to these "examining expert[s']" opinions over "non-examining physician[s]" (Doc. 35). However, it is not clear what "non-examining" physicians the ALJ purportedly preferred. The ALJ did give little weight to Dr. Spezia's findings–as the Plaintiff had reinjured his ankle three days prior to his examination with Dr. Spezia, and the ALJ reasonably concluded that Dr. Spezia's examination represented the effects of that acute injury, not of chronic limitations. The ALJ's decision does not discount Dr. Ringhofer's examination notes. The ALJ's decision "does give greater weight to the report of" Dr. Ringhofer, but did not find that Dr. Ringhofer's recommendation for special shoes translated into a debilitating condition (Doc. 22-2 at 24). As the Report and Recommendation notes, Plaintiff's choice to invoke the "treating physician rule" in an objection here is curious. The "treating physician rule" from the Social Security Administration Regulations "provides that the opinion of a treating source is entitled to controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *White v. Barnhart,* 415 F.3d 654, 658 (7th Cir. 2005) (internal quotations omitted), *citing* 20 C.F.R. 404.1527(d)(2); *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 825 (2003). Dr. Spezia–the physician whose notes were given no weight by the ALJ here–was not a treating physician. Dr. Spezia is the very definition of a nontreating physician. *See White,* 415 F.3d at 658 ("Nontreating source means a physician … who has examined you but does not have, or did not have, an ongoing treatment relationship with you.") The ALJ is "not required to assign controlling weight" to a nontreating source's opinion, and ALJ Warzycki was not unreasonable in his decision to afford little weight to nontreating doctor Spezia's opinion here. *Id.*

Plaintiff's objection to the ALJ's analysis of mental limitations is also a non-starter. The ALJ's decision provides a summary of the record related to Plaintiff's mental functioning, including the records of Dr. Harry Deppe. Dr. Deppe administered the WAIS-III intelligence examination to the Plaintiff, who scored within the average range of intellectual functioning (Doc. 22-2 at 21). ALJ Warzycki does note Plaintiff's self-report of "slowness" and learning disability, but concluded that any such "slowness" did not severely impact his work aptitude. Dr. Deppe's analysis supports this conclusion, as does Plaintiff's own work history. The ALJ's decision that Plaintiff had no severe mental limitations has substantial support in the record.

## CONCLUSION

Plaintiff's objections to the Report and Recommendation (Doc. 35) are **OVERRULED**. The Court agrees with the findings, analysis, and conclusions of Magistrate Judge Proud and **ADOPTS** Magistrate Judge Proud's Report and Recommendation (Doc. 34) and **AFFIRMS** the final decision of the Commissioner of Social Security. This action is **DISMISSED with prejudice**, and the Clerk of Court is **DIRECTED** to enter judgment accordingly

**IT IS SO ORDERED.**

DATED: 3/15/2011

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge